# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| ) | CIVIL ACTION NO. |
| Plaintiff, ) ) | |
| v. ) ) | |
| ) | COMPLAINT |
| DOLLAR TREE STORES, INC., ) ) | |
| ) | **JURY TRIAL DEMAND** |
| Defendant. ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of pregnancy and to provide appropriate relief to Katesha Tiller ("Tiller"), who was adversely affected by such practices. The Equal Employment Opportunity Commission ("EEOC") alleges that Defendant Dollar Tree Stores, Inc., ("Defendant") engaged in intentional discrimination against Tiller when she was harassed and later discharged by her supervisor, Defendant's Store Manager, because of her pregnancy in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331,

1

1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Georgia, Augusta Division.

## **PARTIES**

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has been a Virginia corporation doing business in the State of Georgia and the City of Martinez, and has continuously had at least 15 employees.

5. At all relevant times, Employer has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Tiller filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On August 29, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. On November 8, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

10. Since at least January 2015, Defendant has engaged in unlawful employment practices at its Martinez, Georgia retail store, in violation of Section 703(a) of Title VII, 42 U.S.C. 2000(e)-2(a). Specifically, Defendant subjected Tiller to harassment and ultimately discharged her because of her pregnancy.

11. Tiller began working for Defendant in May 2011 as a Cashier/Stocker

at Defendant's store located at 3830 Washington Road, #4, Martinez, GA 30907 (the "Store").

12. In January 2015, a new Store Manager was hired for the Store and became Tiller's direct supervisor. There were no other management employees above the Store Manager at the Store and, upon information and belief, he had the authority to hire and fire employees at the Store.

13. In January 2015, Tiller learned that she was pregnant.

14. During the same month, Tiller informed the Store Manager that she was pregnant and he responded by asking her if she was going to have an abortion.

15. Because of her pregnancy, Tiller's doctor imposed restrictions on her ability to lift heavy items. Tiller promptly informed the store manager of her lifting restrictions.

16. Periodically, Tiller also had doctor's appointments related to her pregnancy for which she sometimes needed time off. Tiller gave the Store Manager advanced notice of her appointments so that he could factor them into her weekly schedule. After she returned from her appointments, Tiller brought doctor's excuses, but eventually, the Store Manager told her she did not need to bring in the doctor's excuses.

17. Even though the Store Manager did not express any concerns to Tiller

when she initially informed him of her lifting restrictions and doctor's appointments, promptly thereafter, he began sending her threatening text messages and telling her that she needed to decide what was more important, her job or her pregnancy.

18. Even though Tiller gave the Store Manager advanced notice of her doctor's appointments, he intentionally scheduled Tiller to work during the time of her appointments and then would tell her that there would be repercussions if she missed work.

19. On numerous occasions, the Store Manager denied Tiller her scheduled break times or would only let her take her breaks right before her shift ended.

20. Even though Tiller had lifting restrictions imposed by her doctor, the Store Manager still insisted that Tiller lift items that exceeded her lifting restrictions. When Tiller would remind him of her restrictions, he would routinely comment that she had to decide what was more important, implying that she had to choose between her job and following her doctor's orders related to her pregnancy.

21. On more than one occasion, Tiller suffered heavy bleeding and fainting spells during work due to her pregnancy, but the Store Manager would not allow her to take breaks to deal with her conditions, even when she was scheduled to take a work break. He also refused to allow Tiller to take a break to eat, which exacerbated her conditions.

22. On many occasions, when Tiller was supposed to take her break, the Store Manager assigned her other tasks instead, such as going to other Dollar Tree stores to run errands for him.

23. Tiller complained to the District Manager assigned to the store on at least two occasions that the Store Manager was harassing her based on her pregnancy and told him that she was being threatened with repercussions if she went to her doctor's appointments. However, the District Manager ignored Tiller's complaints.

24. Tiller also complained to an Assistant Manager about the Store Manager's harassment of her because of her pregnancy, but nothing was done in response to these complaints either.

25. At all times, the Store Manager's comments and conduct related to her pregnancy offended Tiller.

26. At all times, the Store Manager's comments and conduct related to her pregnancy were unwelcome by Tiller.

27. At all times, Tiller objected to the Store Manager's comments and conduct related to her pregnancy.

28. On at least one occasion, Tiller complained about the Store Manager's conduct to his supervisor, but the harassment continued.

29. In or about May 2015, when Tiller was approximately five months

pregnant, the Store Manager began to cut Tiller's hours from 32-40 hours per week to 8-16 hours per week.

30. In early June 2015, Tiller arrived for her shift in the morning. Later that day, Tiller asked the Store Manager if she could take a break because she was feeling ill, but he said no. Because she was unable to take a break, Tiller's condition worsened until she blacked out. When she recovered, the Store Manager still refused to allow Tiller to stop working and go home to recover. Instead, he required Tiller to stay until her replacement came in at the end of Tiller's scheduled shift.

31. Just before Tiller left for the day, the Store Manager discharged her and told her that her priorities were not in order and that she did not need to work at the store anymore.

32. The Store Manager's conduct described above occurred weekly and sometimes as often as daily, and continued from the day Tiller informed the Store Manager of her pregnancy in January 2015 until her discharge in June 2015.

33. Defendant is liable for the conduct complained of above because the conduct was committed by an individual who was a proxy for Defendant and was Tiller's direct supervisor.

34. The effect of the practices complained of above has been to deprive Tiller of equal employment opportunities and otherwise adversely affect her status

as an employee, because of her pregnancy.

35. The unlawful employment practices complained of above were intentional.

36. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally-protected rights of Tiller.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from creating a work environment that is hostile to pregnant employees and discharging employees based on their pregnancy, as well as any other employment practices which discriminate on the basis of pregnancy.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for pregnant employees and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Katesha Tiller whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful

employment practices, including, but not limited to, front pay.

D.    Order Defendant to make Katesha Tiller whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.    Order Defendant to make Katesha Tiller whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.    Order Defendant to pay Katesha Tiller punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

H.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted,

JAMES L. LEE

        Acting General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        ANTONETTE SEWELL
        Regional Attorney

        LAKISHA DUCKETT ZIMBABWE
        Supervisory Trial Attorney

        s/James Allen
        James Allen
        Trial Attorney
        Georgia Bar No. 016075
        james.allen@eeoc.gov

        Steven A. Wagner
        Trial Attorney
        Georgia Bar No. 000529
        steven.wagner@eeoc.gov

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
(404) 562-6897 (direct)
(404) 562-6905 (facsimile)

Attorneys for Plaintiff EEOC